

# UNITED STATES DISTRICT COURT
## *District of Rhode Island*

### CLERK'S CERTIFICATE AND APPELLATE COVER SHEET
### ABBREVIATED ELECTRONIC RECORD

| Case Information |
|---|

Case Caption: **Relentless Inc et al**     vs.  **U.S. Department of Commerce et al**

District Court Number: **20-cv-108**     Presiding Judge: **Judge Smith**

Notice of Appeal filed by: **Plaintiff**     Notice of Appeal document number:  **49**

Appeal from: **OPINION AND ORDER EFC 47**

Other information:

Fee status:  **Paid**     Pro se case:     Yes ☐    No ☑

Emergency or requires expedition: **No**     *If yes, reason:*

| Record Information |
|---|

Motions Pending     Yes ☐    No ☑
*If yes, document #*

Other record information:

Related case(s) on appeal:

| Certification |
|---|

I, Hanorah Tyer-Witek, Clerk of the United States District Court for the District of Rhode Island, do certify that the following annexed electronic documents constitute the abbreviated record on appeal in the above referenced case:

**HANORAH TYER-WITEK**
Clerk of Court

/s/ Kayla DaCruz
_____
Deputy Clerk

Date:  **10/28/2021**

APPEAL

# U.S. District Court
## District of Rhode Island (Providence)
## CIVIL DOCKET FOR CASE #: <u>1:20−cv−00108−WES−PAS</u>

Relentless Inc et al v. U.S. Department of Commerce et al
Assigned to: District Judge William E. Smith
Referred to: Magistrate Judge Patricia A. Sullivan
Cause: 05:702 Administrative Procedure Act

Date Filed: 03/04/2020
Date Terminated: 09/20/2021
Jury Demand: None
Nature of Suit: 899 Other Statutes:
Administrative Procedures Act/Review or
Appeal of Agency Decision
Jurisdiction: U.S. Government Defendant

## <u>Plaintiff</u>

**Relentless Inc**                represented by   **John J. Vecchione**
New Civil Liberties Allliance
1225 19th St. NW, Ste. 450
Washington, DC 20036−2411
202−869−5210
Fax: 202−869−5238
Email: <u>john.vecchione@ncla.legal</u>
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kara M. Rollins**
New Civil Liberties Alliance
1225 19th Street NW, Ste 450
Washington, DC 20036
202−869−5210
Fax: 202−869−5238
Email: <u>kara.rollins@ncla.legal</u>
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Timothy J. Robenhymer**
Timothy J. Robenhymer
303 Jefferson Blvd.
2nd Floor
Warwick, RI 02888
921−4800
Fax: 921−4805
Email: <u>tjr@lawofficesri.com</u>
*ATTORNEY TO BE NOTICED*

**Kevin J. Holley**
Holley Law, LLC
33 College Hill Road
Suite 25C

1

Warwick, RI 02886
521−2622
Fax: 521−6901
Email: kevin@holleylawllc.com
*TERMINATED: 02/25/2021*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Huntress, Inc**                    represented by   **John J. Vecchione**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kara M. Rollins**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Timothy J. Robenhymer**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Kevin J. Holley**
(See above for address)
*TERMINATED: 02/25/2021*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Seafreeze Fleet LLC**              represented by   **John J. Vecchione**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kara M. Rollins**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Timothy J. Robenhymer**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Kevin J. Holley**
(See above for address)
*TERMINATED: 02/25/2021*
*ATTORNEY TO BE NOTICED*

2

V.

**Defendant**

| | | |
|---|---|---|
| **U.S. Department of Commerce** | represented by | **Alison Finnegan**<br>U.S. Department of Justice<br>Environment & Natural Resources<br>Division−WMRS<br>4 Constitution Square<br>150 M Street N.E. Rm. 3.118<br>Washington, DC 20002<br>202−305−0500<br>Email: alison.c.finnegan@usdoj.gov<br>*ATTORNEY TO BE NOTICED*<br><br>**Kristine S. Tardiff**<br>US Department of Justice<br>Environmental and Natural Resources<br>Division<br>53 Pleasant Street<br>4th Floor<br>Concord, NH 03301<br>603−496−3858<br>Email: kristine.tardiff@usdoj.gov<br>*ATTORNEY TO BE NOTICED* |

**Defendant**

| | | |
|---|---|---|
| **Wilbur L. Ross, Jr.**<br>*in his official capacity as Secretary of*<br>*Commerce* | represented by | **Alison Finnegan**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED*<br><br>**Kristine S. Tardiff**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |

**Defendant**

| | | |
|---|---|---|
| **National Oceanic and Atmospheric**<br>**Administration** | represented by | **Alison Finnegan**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED*<br><br>**Kristine S. Tardiff**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |

**Defendant**

| | | |
|---|---|---|
| **Neil Jacobs**<br>*in his official capacity as Acting*<br>*Administrator of NOAA* | represented by | **Alison Finnegan**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED*<br><br>**Kristine S. Tardiff**<br>(See above for address) |

*ATTORNEY TO BE NOTICED*

**Defendant**

**National Marine Fisheries Service**                represented by   **Alison Finnegan**
*a/k/a NOAA FISHERIES*                                                (See above for address)
                                                                     *ATTORNEY TO BE NOTICED*

                                                                     **Kristine S. Tardiff**
                                                                     (See above for address)
                                                                     *ATTORNEY TO BE NOTICED*

**Defendant**

**Chris Oliver**                                     represented by   **Alison Finnegan**
*in his official capacity as Assistant*                              (See above for address)
*Administrator for NOAA Fisheries*                                   *ATTORNEY TO BE NOTICED*

                                                                     **Kristine S. Tardiff**
                                                                     (See above for address)
                                                                     *ATTORNEY TO BE NOTICED*

| Date Filed | # | Page | Docket Text |
|---|---|---|---|
| 03/04/2020 | 1 | | COMPLAINT ( filing fee paid $ 400.00, receipt number 0103−1480902 ), filed by Seafreeze Fleet LLC, Huntress, Inc, Relentless Inc. (Attachments: # 1 Exhibit, # 2 Civil Cover Sheet, # 3 Attachment to Civil Cover Sheet)(Holley, Kevin) (Entered: 03/04/2020) |
| 03/04/2020 | | | Case assigned to District Judge William E. Smith and Magistrate Judge Patricia A. Sullivan. (Hicks, Alyson) (Entered: 03/04/2020) |
| 03/04/2020 | 2 | | CASE OPENING NOTICE ISSUED (Hicks, Alyson) (Entered: 03/04/2020) |
| 03/09/2020 | 3 | | MOTION for John Vecchione to Appear Pro Hac Vice *for Plaintiffs* ( filing fee paid $ 100.00, receipt number 0103−1481878 ) filed by All Plaintiffs. (Holley, Kevin) (Entered: 03/09/2020) |
| 03/09/2020 | 4 | | MOTION for Kara Rollins to Appear Pro Hac Vice *for Plaintiffs* ( filing fee paid $ 100.00, receipt number 0103−1482000 ) filed by All Plaintiffs. (Holley, Kevin) (Entered: 03/09/2020) |
| 03/09/2020 | 5 | | Summons Request filed by Huntress, Inc, Relentless Inc, Seafreeze Fleet LLC. (Attachments: # 1 Chris Oliver, # 2 Neil Jacobs, # 3 NMFS, # 4 NOAA, # 5 Wilbur Ross)(Holley, Kevin) (Entered: 03/09/2020) |
| 03/09/2020 | 6 | | Corporate Disclosure Statement by Huntress, Inc, Relentless Inc, Seafreeze Fleet LLC. (Holley, Kevin) (Entered: 03/09/2020) |
| 03/09/2020 | 7 | | Summons Issued as to All Defendants. (Attachments: # 1 Summons, # 2 Summons, # 3 Summons, # 4 Summons, # 5 Summons)(Hicks, Alyson) (Entered: 03/09/2020) |
| 03/10/2020 | | | TEXT ORDER granting 3 Motion to Appear Pro Hac Vice for John Vecchione filed by All Plaintiffs and granting 4 Motion to Appear Pro Hac Vice for Kara |

4

| | | | |
|---|---|---|---|
| | | | Rollins filed by All Plaintiffs. − So Ordered by District Judge William E. Smith on 3/10/2020. (McGuire, Vickie) (Entered: 03/10/2020) |
| 03/30/2020 | 8 | | AFFIDAVIT of Service, filed by Seafreeze Fleet LLC, Huntress, Inc, Relentless Inc for Affidavit of service *for Plaintiffs* Neil Jacobs served on 3/16/2020, answer due 4/6/2020; National Marine Fisheries Service served on 3/16/2020, answer due 4/6/2020; National Oceanic and Atmospheric Administration served on 3/16/2020, answer due 4/6/2020; Chris Oliver served on 3/16/2020, answer due 4/6/2020; Wilbur L. Ross, Jr. served on 3/16/2020, answer due 4/6/2020; U.S. Department of Commerce served on 3/16/2020, answer due 4/6/2020. (Holley, Kevin) (Entered: 03/30/2020) |
| 03/31/2020 | 9 | | NOTICE of Appearance by Alison Finnegan on behalf of All Defendants (Finnegan, Alison) (Entered: 03/31/2020) |
| 04/02/2020 | 10 | | MOTION to Transfer Case *to the District of Columbia* filed by All Defendants. **Responses due by 4/16/2020.** (Attachments: # 1 Supporting Memorandum, # 2 Proposed Form of Order, # 3 Exhibit A (Loper Bright Enterprises v. Ross, Case No. 20−cv−0466 (D.D.C.)), # 4 Exhibit B (Admin. Office of the Courts, U.S. District Court Judicial Caseload Profiles for D.R.I. and D.D.C.))(Finnegan, Alison) (Entered: 04/02/2020) |
| 04/16/2020 | 11 | | RESPONSE In Opposition to 10 MOTION to Transfer Case *to the District of Columbia* filed by All Plaintiffs. **Replies due by 4/23/2020.** (Attachments: # 1 Exhibit A Mulvey Declaration)(Holley, Kevin) (Entered: 04/16/2020) |
| 04/23/2020 | 12 | | REPLY to Response re 11 Response to Motion, filed by All Defendants. (Finnegan, Alison) (Entered: 04/23/2020) |
| 04/30/2020 | 13 | | ANSWER to Complaint by Neil Jacobs, National Marine Fisheries Service, National Oceanic and Atmospheric Administration, Chris Oliver, Wilbur L. Ross, Jr., U.S. Department of Commerce.(Finnegan, Alison) (Entered: 04/30/2020) |
| 07/09/2020 | 14 | | NOTICE by Huntress, Inc, Relentless Inc, Seafreeze Fleet LLC *requesting rule 16 conference* (Holley, Kevin) (Entered: 07/09/2020) |
| 07/14/2020 | | | TEXT ORDER: Pursuant to Rule 26 of the Federal Rules of Civil Procedure, the parties are directed to begin their mandatory disclosures immediately, before the Rule 16 conference. To the extent that the parties wish to begin discovery on a cooperative basis prior to the initial conference, they are encouraged to do so. So Ordered by District Judge William E. Smith on 7/14/2020. (Jackson, Ryan) (Entered: 07/14/2020) |
| 08/25/2020 | 15 | | MEMORANDUM AND ORDER denying 10 Motion to Transfer Case. So Ordered by District Judge William E. Smith on 8/25/2020. (Jackson, Ryan) (Entered: 08/25/2020) |
| 08/27/2020 | 16 | | NOTICE of Hearing: Telephonic Rule 16 Conference **scheduled for WEDNESDAY 9/2/2020 at 9:30 AM** before District Judge William E. Smith. Dial−in instructions will be emailed to all counsel. (Jackson, Ryan) (Entered: 08/27/2020) |
| 08/31/2020 | 17 | | NOTICE of Appearance by Kristine S. Tardiff on behalf of All Defendants (Tardiff, Kristine) (Entered: 08/31/2020) |

| 08/31/2020 | 18 | | NOTICE by Huntress, Inc, Relentless Inc, Seafreeze Fleet LLC *Plaintiffs' Witness Statement Filed* (Vecchione, John) (Entered: 08/31/2020) |
|---|---|---|---|
| 08/31/2020 | 19 | | RULE 16 STATEMENT by Neil Jacobs, National Marine Fisheries Service, National Oceanic and Atmospheric Administration, Chris Oliver, Wilbur L. Ross, Jr., U.S. Department of Commerce. (Finnegan, Alison) (Entered: 08/31/2020) |
| 09/02/2020 | | | Minute Entry for proceedings held before District Judge William E. Smith: Telephonic Rule 16 Conference held on 9/2/2020; counsel on call: J. Vecchione; K. Rollins; A. Finnegan; K. Tardiff. (Jackson, Ryan) (Entered: 09/03/2020) |
| 09/11/2020 | 20 | | NOTICE by Neil Jacobs, National Marine Fisheries Service, National Oceanic and Atmospheric Administration, Chris Oliver, Wilbur L. Ross, Jr., U.S. Department of Commerce *of Filing Administrative Record* (Attachments: # 1 Exhibit A (Index to Administrative Record), # 2 Exhibit B (Certification))(Finnegan, Alison) (Entered: 09/11/2020) |
| 09/11/2020 | 21 | | ADMINISTRATIVE RECORD filed by Neil Jacobs, National Marine Fisheries Service, National Oceanic and Atmospheric Administration, Chris Oliver, Wilbur L. Ross, Jr., U.S. Department of Commerce NOTICE: In order to view this document, you must first log in using your CMECF Filer login.. (Attachments: # 1 Bates Numbers 1−853, # 2 Bates Numbers 854−1409)(Finnegan, Alison) (Entered: 09/11/2020) |
| 09/11/2020 | 22 | | ADMINISTRATIVE RECORD filed by Neil Jacobs, National Marine Fisheries Service, National Oceanic and Atmospheric Administration, Chris Oliver, Wilbur L. Ross, Jr., U.S. Department of Commerce NOTICE: In order to view this document, you must first log in using your CMECF Filer login.. (Attachments: # 1 Bates Numbers 1410−2651, # 2 Bates Numbers 2652−3506, # 3 Bates Numbers 3507−3881)(Finnegan, Alison) (Entered: 09/11/2020) |
| 09/11/2020 | 23 | | ADMINISTRATIVE RECORD filed by Neil Jacobs, National Marine Fisheries Service, National Oceanic and Atmospheric Administration, Chris Oliver, Wilbur L. Ross, Jr., U.S. Department of Commerce NOTICE: In order to view this document, you must first log in using your CMECF Filer login.. (Attachments: # 1 Bates Numbers 3882−4980, # 2 Bates Numbers 4981−5832)(Finnegan, Alison) (Entered: 09/11/2020) |
| 09/11/2020 | 24 | | ADMINISTRATIVE RECORD filed *Bates Numbers 5833−6581* by Neil Jacobs, National Marine Fisheries Service, National Oceanic and Atmospheric Administration, Chris Oliver, Wilbur L. Ross, Jr., U.S. Department of Commerce NOTICE: In order to view this document, you must first log in using your CMECF Filer login.. (Attachments: # 1 Bates Numbers 6582−7596)(Finnegan, Alison) (Entered: 09/11/2020) |
| 09/11/2020 | 25 | | ADMINISTRATIVE RECORD filed *Bates Numbers 7597−8814* by Neil Jacobs, National Marine Fisheries Service, National Oceanic and Atmospheric Administration, Chris Oliver, Wilbur L. Ross, Jr., U.S. Department of Commerce NOTICE: In order to view this document, you must first log in using your CMECF Filer login.. (Attachments: # 1 Bates Numbers 8815−9754)(Finnegan, Alison) (Entered: 09/11/2020) |
| 09/11/2020 | 26 | | ADMINISTRATIVE RECORD filed *Bates Numbers 9755−10663* by Neil Jacobs, National Marine Fisheries Service, National Oceanic and Atmospheric |

|  |  |  | Administration, Chris Oliver, Wilbur L. Ross, Jr., U.S. Department of Commerce NOTICE: In order to view this document, you must first log in using your CMECF Filer login.. (Attachments: # 1 Bates Numbers 10664−11554)(Finnegan, Alison) (Entered: 09/11/2020) |
| 09/11/2020 | 27 |  | ADMINISTRATIVE RECORD filed *Bates Numbers 11555−12893* by Neil Jacobs, National Marine Fisheries Service, National Oceanic and Atmospheric Administration, Chris Oliver, Wilbur L. Ross, Jr., U.S. Department of Commerce NOTICE: In order to view this document, you must first log in using your CMECF Filer login.. (Attachments: # 1 Bates Numbers 12894−13544)(Finnegan, Alison) (Entered: 09/11/2020) |
| 09/11/2020 | 28 |  | ADMINISTRATIVE RECORD filed *Bates Numbers 13545−14488* by Neil Jacobs, National Marine Fisheries Service, National Oceanic and Atmospheric Administration, Chris Oliver, Wilbur L. Ross, Jr., U.S. Department of Commerce NOTICE: In order to view this document, you must first log in using your CMECF Filer login.. (Attachments: # 1 Bates Numbers 14489−15757)(Finnegan, Alison) (Entered: 09/11/2020) |
| 09/11/2020 | 29 |  | ADMINISTRATIVE RECORD filed *Bates Numbers 15758−16690* by Neil Jacobs, National Marine Fisheries Service, National Oceanic and Atmospheric Administration, Chris Oliver, Wilbur L. Ross, Jr., U.S. Department of Commerce NOTICE: In order to view this document, you must first log in using your CMECF Filer login.. (Attachments: # 1 Bates Numbers 16691−17641)(Finnegan, Alison) (Entered: 09/11/2020) |
| 09/11/2020 | 30 |  | ADMINISTRATIVE RECORD filed *Bates Numbers 17642−17800* by Neil Jacobs, National Marine Fisheries Service, National Oceanic and Atmospheric Administration, Chris Oliver, Wilbur L. Ross, Jr., U.S. Department of Commerce NOTICE: In order to view this document, you must first log in using your CMECF Filer login.. (Finnegan, Alison) (Entered: 09/11/2020) |
| 09/11/2020 | 31 |  | NOTICE by Huntress, Inc, Relentless Inc, Seafreeze Fleet LLC *of Joint Proposed Schedule* (Vecchione, John) (Entered: 09/11/2020) |
| 09/11/2020 | 32 |  | AMENDED DOCUMENT by Neil Jacobs, National Marine Fisheries Service, National Oceanic and Atmospheric Administration, Chris Oliver, Wilbur L. Ross, Jr., U.S. Department of Commerce. Amendment to 20 Notice (Other), . (Attachments: # 1 Exhibit A (Corrected Index to Administrative Record), # 2 Exhibit B (Certification))(Finnegan, Alison) (Entered: 09/11/2020) |
| 09/15/2020 |  |  | TEXT ORDER adopting the joint proposed schedule set forth in ECF No. 31 Notice (Other) filed by Relentless Inc, Seafreeze Fleet LLC, Huntress, Inc. So Ordered by District Judge William E. Smith on 9/15/2020. (Jackson, Ryan) (Entered: 09/15/2020) |
| 10/27/2020 | 33 |  | NOTICE by Neil Jacobs, National Marine Fisheries Service, National Oceanic and Atmospheric Administration, Chris Oliver, Wilbur L. Ross, Jr., U.S. Department of Commerce *of Filing Supplement to Administrative Record* (Attachments: # 1 Exhibit A (Certification), # 2 Exhibit B (Index))(Finnegan, Alison) (Entered: 10/27/2020) |
| 10/27/2020 | 34 |  | ADMINISTRATIVE RECORD filed *(Supplement) (Bates Nos. 17801−17814)* by Neil Jacobs, National Marine Fisheries Service, National Oceanic and Atmospheric Administration, Chris Oliver, Wilbur L. Ross, Jr., U.S. Department |

| | | | |
|---|---|---|---|
| | | | of Commerce NOTICE: In order to view this document, you must first log in using your CMECF Filer login.. (Attachments: # 1 Bates Nos. 17815−17819)(Finnegan, Alison) (Entered: 10/27/2020) |
| 10/30/2020 | 35 | | STIPULATION *and Proposed Order Setting Briefing Schedule* filed by Neil Jacobs, National Marine Fisheries Service, National Oceanic and Atmospheric Administration, Chris Oliver, Wilbur L. Ross, Jr., U.S. Department of Commerce. (Finnegan, Alison) (Entered: 10/30/2020) |
| 11/23/2020 | 36 | | Order Setting Brief Schedule: Plaintiffs' Motion for Summary Judgment due by 12/4/2020, and not to exceed 40 pages; Defendants' Cross Motion for Summary Judgment/Response to Plaintiffs' Motion for Summary Judgment due by 1/15/2021, and not to exceed 45 pages; Plaintiffs' Response to Defendants' Motion for Summary Judgment/Reply in support of their Motion for Summary Judgment due by 1/29/2021, and not to exceed 30 pages; and Defendants' Reply in support of thier Cross Motion for Summary Judgment due by 2/12/2021, and not to exceed 25 pages. So Ordered by District Judge William E. Smith on 11/23/2020. (Simoncelli, Michael) (Entered: 11/23/2020) |
| 12/04/2020 | 37 | | MOTION for Summary Judgment *for Plaintiffs* filed by Huntress, Inc, Relentless Inc, Seafreeze Fleet LLC. **Responses due by 12/18/2020.** (Attachments: # 1 Supporting Memorandum Summary Judgment Mem, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit, # 6 Exhibit, # 7 Exhibit, # 8 Exhibit, # 9 Exhibit, # 10 Exhibit, # 11 Exhibit, # 12 Exhibit, # 13 Exhibit, # 14 Exhibit, # 15 Exhibit, # 16 Exhibit)(Vecchione, John) (Entered: 12/04/2020) |
| 01/15/2021 | 38 | | Cross MOTION for Summary Judgment filed by Neil Jacobs, National Marine Fisheries Service, National Oceanic and Atmospheric Administration, Chris Oliver, Wilbur L. Ross, Jr., U.S. Department of Commerce. **Responses due by 1/29/2021.** (Attachments: # 1 Supporting Memorandum, # 2 Proposed Order)(Finnegan, Alison) (Entered: 01/15/2021) |
| 01/15/2021 | 39 | | RESPONSE In Opposition to 37 MOTION for Summary Judgment *for Plaintiffs* filed by All Defendants. **Replies due by 1/22/2021.** (Finnegan, Alison) (Entered: 01/15/2021) |
| 01/29/2021 | 40 | | RESPONSE In Opposition to 38 Cross MOTION for Summary Judgment filed by All Plaintiffs. **Replies due by 2/5/2021.** (Vecchione, John) (Entered: 01/29/2021) |
| 01/29/2021 | 41 | | REPLY to Response re 39 Response to Motion *Reply to Defendants' Response to Plaintiffs' Motion for Summary Judgment* filed by All Plaintiffs. (Vecchione, John) (Entered: 01/29/2021) |
| 02/05/2021 | 42 | | MOTION to Withdraw as Attorney filed by All Plaintiffs. **Responses due by 2/19/2021.** (Robenhymer, Timothy) (Entered: 02/05/2021) |
| 02/12/2021 | 43 | | REPLY to Response re 41 Reply to Response, 40 Response to Motion filed by All Defendants. (Finnegan, Alison) (Entered: 02/12/2021) |
| 02/25/2021 | | | TEXT ORDER granting 42 Motion to Withdraw as Attorney. Attorney Kevin J. Holley terminated. So Ordered by District Judge William E. Smith on 2/25/2021. (Jackson, Ryan) (Entered: 02/25/2021) |
| 03/26/2021 | 44 | | NOTICE by Huntress, Inc, Relentless Inc, Seafreeze Fleet LLC re 37 MOTION for Summary Judgment *for Plaintiffs Regarding facts subsequent to SJ* |

| | | | |
|---|---|---|---|
| | | | (Vecchione, John) (Entered: 03/26/2021) |
| 06/01/2021 | 45 | | NOTICE by Huntress, Inc, Relentless Inc, Seafreeze Fleet LLC re 37 MOTION for Summary Judgment *for Plaintiffs Second Subsequent Facts* (Attachments: # 1 Exhibit Notice of New Date For Monitoring)(Vecchione, John) (Entered: 06/01/2021) |
| 06/08/2021 | | | NOTICE of Hearing on 37 MOTION for Summary Judgment *for Plaintiffs* and 38 Cross MOTION for Summary Judgment: Motion Hearing via Zoom ***scheduled for TUESDAY 7/27/2021 at 10:00 AM as a Remote Hearing*** before District Judge William E. Smith; Zoom information below.<br><br>**(Zoom Meeting ID: 160 634 6566, Passcode: 003698)** (Jackson, Ryan) (Entered: 06/08/2021) |
| 06/16/2021 | 46 | | NOTICE by Neil Jacobs, National Marine Fisheries Service, National Oceanic and Atmospheric Administration, Chris Oliver, Wilbur L. Ross, Jr., U.S. Department of Commerce *of Supplemental Authority* (Attachments: # 1 Exhibit A (Memorandum Opinion & Order in Loper Bright Enterprises v Ross (D.D.C.)))(Finnegan, Alison) (Entered: 06/16/2021) |
| 07/27/2021 | | | Minute Entry for proceedings held before District Judge William E. Smith: Motion Hearing held on 7/27/2021 re 37 MOTION for Summary Judgment *for Plaintiffs* filed by Relentless Inc, Seafreeze Fleet LLC, Huntress, Inc, 38 Cross MOTION for Summary Judgment filed by Wilbur L. Ross, Jr., U.S. Department of Commerce, National Marine Fisheries Service, National Oceanic and Atmospheric Administration, Chris Oliver, Neil Jacobs. John Vecchione & Timothy Robenhymer for Plaintiff. Alison Finnegan & Kristine Tardiff for Defendants. Plaintiff and Defendant present arguments to the Court. Court to take under advisement. Order to issue. Court adjourned. (Court Reporter Lisa Schwam in Courtroom Zoom Video at 10:00 am.) (McGuire, Vickie) (Entered: 07/27/2021) |
| 09/20/2021 | 47 | | OPINION AND ORDER: Plaintiffs' Motion for Summary Judgment, ECF No. 37 , is DENIED, and Defendants' Cross−Motion for Summary Judgment, ECF No. 38 , isGRANTED. So Ordered by District Judge William E. Smith on 9/20/2021. (Urizandi, Nisshy) (Entered: 09/20/2021) |
| 09/20/2021 | 48 | | JUDGMENT in favor of National Marine Fisheries Service, National Oceanic and Atmospheric Administration, U.S. Department of Commerce, Chris Oliver, Neil Jacobs, Wilbur L. Ross, Jr. against Huntress, Inc, Relentless Inc, Seafreeze Fleet LLC. So Ordered by The Clerk of Court on 9/20/2021. (Urizandi, Nisshy) (Entered: 09/20/2021) |
| 10/28/2021 | 49 | | NOTICE OF APPEAL by Huntress, Inc, Relentless Inc, Seafreeze Fleet LLC as to 47 Order on Motion for Summary Judgment, ( filing fee paid $ 505.00, receipt number ARIDC−1680920 )<br><br>**NOTICE TO COUNSEL: Counsel should register for a First Circuit CM/ECF Appellate Filer Account at http://pacer.psc.uscourts.gov/cmecf/. Counsel should also review the First Circuit requirements for electronic filing by visiting the CM/ECF Information section at http://www.ca1.uscourts.gov/cmecf** Appeal Record due by 11/4/2021. (Vecchione, John) (Entered: 10/28/2021) |

| 10/28/2021 | <u>50</u> | | CLERK'S CERTIFICATE AND APPELLATE COVER SHEET: Abbreviated record on appeal consisting of notice of appeal, order(s) being appealed, and a certified copy of the district court docket report transmitted to the U.S. Court of Appeals for the First Circuit in accordance with 1st Cir. R. 11.0(b). <u>49</u> Notice of Appeal,,. (Attachments: # <u>1</u> Relentless ROA)(DaCruz, Kayla) (Entered: 10/28/2021) |

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF RHODE ISLAND

**RELENTLESS INC., et al.,**
_____

<div></div>

Plaintiff

v.

**U.S. DEPT. OF COMMERCE, et al.,**
_____

Defendant

Case No. **20-108 WES**
_____

### <u>NOTICE OF APPEAL</u>

Notice is hereby given that **Relentless, Inc.; Huntress, Inc.; Seafreeze Fleet LLC**,
_____
Name

the **Plaintiffs** in the above-referenced matter, hereby appeals to the
_____
Party type

United States Court of Appeals for the First Circuit from the **final judgment in favor of**
_____
Final judgment or description of order

**Defendants** entered in this action on **9/20/2021**.
_____     _____
Date of entry

Respectfully submitted,

**John Vecchione**                         **/s/ John Vecchione**
_____          _____
Name                                       Signature

**Admitted pro hac vice**                 **10/25/2021**
_____          _____
Bar Number                                 Date

**New Civil Liberties Alliance**          **(202) 869-5210**
_____          _____
Firm/Agency                                Telephone Number

**1225 19th St. NW, Ste. 450**            **(202) 869-5238**
_____          _____
Address                                    Fax Number

**Washington, DC 20036**                  **John.Vecchione@ncla.legal**
_____          _____
City, State, Zip Code                      E-mail Address

11

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

```
_____
                                    )
RELENTLESS INC., et al.,            )
                                    )
        Plaintiffs,                 )
                                    )
    v.                              )    C.A. No. 20-108 WES
                                    )
U.S. DEPARTMENT OF COMMERCE,        )
et al.,                             )
                                    )
        Defendant.                  )
_____)
```

## OPINION AND ORDER

WILLIAM E. SMITH, District Judge.

A recently promulgated regulation requires commercial herring fishing vessels in New England to pay the daily salaries of at-sea monitors. Plaintiffs argue, inter alia, that the Magnuson-Stevens Act does not permit industry-funded monitoring; the regulation's outsized impact on certain classes of fishing vessels violates the National Standards set forth in the Magnuson-Stevens Act; the process by which the agency adopted the regulation violated the Regulatory Flexibility Act; and the regulation violates the Commerce Clause by forcing fishing vessels to pay for third-party monitors. For the reasons that follow, Plaintiffs' Motion for Summary Judgment, ECF No. 37, is DENIED, and Defendants' Cross-Motion for Summary Judgment, ECF No. 38, is GRANTED.[1]

_____

[1] The Court substitutes the Secretary of Commerce, Gina M. Raimondo, for Wilbur L. Ross; Richard Spinrad, NOAA Administrator,

I.   BACKGROUND

A.   Magnuson-Stevens Act

In "[r]espon[se] to depletion of the nation's fish stocks due to overfishing[,]" Congress passed the 1976 Magnuson-Stevens Fishery Conservation and Management Act ("MSA" or "Act"), 16 U.S.C. §§ 1801-1884.  Goethel v. U.S. Dept. of Com., 854 F.3d 106, 108-09 (1st Cir. 2017) (quoting Associated Fisheries of Me., Inc. v. Daley, 127 F.3d 104, 107 (1st Cir. 1997)).  Through the MSA, Congress sought to "take immediate action to conserve and manage the fishery resources found off the coasts of the United States" and "to promote domestic commercial and recreational fishing under sound conservation and management principles."  16 U.S.C. § 1801(b)(1), (3).

The MSA's primary mechanism is the promulgation and enforcement of "fishery management plans," each of which regulates a fishery (defined as "one or more stocks of fish which can be treated as a unit for purposes of conservation and management") in a given region.  Id. § 1802(13)(A); see also id. § 1853.  A fishery management plan, which is usually developed by the region's fishery management council, must specify the "conservation and management measures" that are "necessary and appropriate" to "prevent overfishing and rebuild overfished stocks, and to protect,

_____

for Neil Jacobs; and Janet Coit, Assistant Administrator for NOAA Fisheries, for Chris Oliver.  See Fed. R. Civ. P. 25(d).

restore, and promote the long-term health and stability of the fishery." Id. § 1853(a)(1)(A). Similarly, a plan may "prescribe such other measures, requirements, or conditions and restrictions as are determined to be necessary and appropriate for the conservation and management of the fishery." Id. § 1853(b)(14). In addition to the plan itself, the council must develop regulations that would be "necessary or appropriate" to implement the plan. Id. § 1853(c).

The Secretary is tasked with reviewing the plan for consistency with applicable law and publishing it for a sixty-day period of notice and comment. Id. § 1854(a)(1). After considering all comments, "[t]he Secretary shall approve, disapprove, or partially approve [the] plan." Id. § 1854(a)(3). The implementing regulations must, too, be promulgated through notice and comment, with a publication period of fifteen to sixty days. Id. § 1854(b). The Secretary has delegated these responsibilities to the National Oceanic and Atmospheric Administration, the parent agency of the National Marine Fisheries Service ("NMFS"). See Goethel, 854 F.3d at 109 n.1. The adoption of a plan and its implementing rules are subject to judicial review. See id. § 1855(f).

B.   Industry-Funded Monitoring Omnibus Amendment

The current herring fishery management plan was implemented by the New England Fishery Management Council ("Council") in 2000.

AR17104.[2]  Among other provisions, the plan includes an annual catch limit and various restrictions on when and where herring may be caught.  See 50 C.F.R. § 648.200.  Since 2007, the fishery has been subject to the Standardized Bycatch Reporting Methodology ("SBRM") program, through which bycatch is monitored by on-board, government-funded observers.  See AR17293.  The frequency of SBRM coverage varies based on available funding.  See MSA Provisions; Fisheries of the Northeastern U.S.; Industry-Funded Monitoring Omnibus Amendment ("Final Rule"), 85 Fed. Reg. 7425 (Feb. 7, 2020) (to be codified at 50 C.F.R. pt. 648) (AR17742).

In 2017, the Council adopted the Industry-Funded Monitoring Omnibus Amendment ("Omnibus Amendment"), later approved by the National Marine Fisheries Service ("NMFS"), which provided for on-board human monitoring to be funded by the herring industry.  See Final Rule, 85 Fed. Reg. at 7414-19 (AR17731-36).  NMFS pays for administrative costs - such as training and certification of monitors, data processing, and liaison activities with various partners - while the herring industry is required to fund the travel expenses and daily salaries of the monitors.  Id. at 7415-16 (AR17732-33).  Through data collected by the monitors regarding retained and discarded catch, the program is intended to increase the accuracy of catch estimates for herring and incidental catch

---

[2] The Court cites the Administrative Record, ECF Nos. 21-30, 34, using the Bates numbering system utilized by the parties.

species. Id. at 7417-18 (AR17734-35). The program has a coverage target – including both SBRM and industry-funded monitoring – of fifty percent. Id. at 7417 (AR17734). The two types of monitoring do not co-occur on any one trip. Id. Therefore, industry-funded monitoring only applies to the delta between the percentage of trips with SBRM monitoring (which varies based on available funding) and the fifty-percent target.

For each trip in which a vessel declares that it will catch herring, NMFS informs the vessel operator whether an at-sea monitor is required. However, the monitoring requirement will be waived if (1) an at-sea monitor is not available, (2) the vessel has midwater trawl gear and intends to operate as a wing vessel (meaning that it will not carry any fish), or (3) the vessel intends to land less than fifty metric tons of herring during the trip. Id. at 7418 (AR17735). Midwater trawl vessels - as opposed to bottom trawlers like Plaintiffs, see Lapp Decl. ¶ 4, ECF No. 37-4 – can avoid the at-sea monitoring requirement by using electronic monitoring devices in combination with portside sampling protocols. Id. at 7419-420 (AR17736-37). NMFS estimates that the cost of an at-sea monitor is $710 per day. Id. at 7420 (AR17735).

NMFS published the proposed amendment on September 19, 2018, and the sixty-day comment period ended on November 19, 2018. Id. at 7414 (AR17731) (citing 83 Fed. Reg. 47,326). NMFS received

seven comment letters criticizing the proposal, but nevertheless approved the Omnibus Amendment on December 18, 2018. Id. at 7424 (AR17741). In a process that partially overlapped the Omnibus Amendment approval process, NMFS published the proposed rule implementing the amendment on November 7, 2018, with a forty-seven-day comment period ending on December 24, 2018. Id. at 7414 (AR17731) (citing 83 Fed. Reg. 55,665). Again, notwithstanding twenty comment letters, NMFS adopted and promulgated the rule ("Final Rule"). Id. at 7414, 7422 (AR17731, 17739).

C. Plaintiffs' Regulatory Challenge

Plaintiffs are the operators of two fishing vessels that catch herring and other species. See Letter from Seafreeze to Herring/Observer Committee, June 30, 2015, AR17801. Unlike other fishing vessels, Plaintiffs freeze their catch on-board. Id. Therefore, Plaintiffs' trips are longer, and they have greater flexibility to choose what to harvest during each trip. Id. Seafreeze Ltd., a sister company of Plaintiff Seafreeze Fleet LLC, submitted comments during the regulatory approval process, raising arguments similar to those advanced by Plaintiffs here. See Final Rule, 85 Fed. Reg. at 7422-26 (AR17739-743).

II. LEGAL STANDARD

Challenges to fishery management plans are reviewed pursuant to the Administrative Procedure Act ("APA"). See 16 U.S.C. § 1855(f)(1)(B). "[A] motion for summary judgment is simply a

vehicle to tee up a case for judicial review . . . ." Bos. Redevelopment Auth. v. Nat'l Park Serv., 838 F.3d 42, 47 (1st Cir. 2016) (citing Mass. Dep't of Pub. Welfare v. Sec'y of Agric., 984 F.2d 514, 526 (1st Cir. 1993)). "Because the APA standard affords great deference to agency decisionmaking and because the Secretary's action is presumed valid, judicial review, even at the summary judgment stage, is narrow." Associated Fisheries of Me., 127 F.3d at 109 (citing Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 415-16 (1971)). The Court will set aside the regulation only if it is "'arbitrary, capricious, an abuse of discretion,' or 'without observance of procedure required by law,' or otherwise contrary to law." Campanale & Sons, Inc. v. Evans, 311 F.3d 109, 116 (1st Cir. 2002) (quoting 5 U.S.C. § 706(2)(A)-(D)). The Court defers to the agency's factfinding "unless 'the record evidence would compel a reasonable factfinder to make a contrary determination.'" Guzman v. INS, 327 F.3d 11, 15 (1st Cir. 2003) (quoting Aguilar-Solis v. INS, 168 F.3d 565, 569 (1st Cir. 1999)).

III. DISCUSSION

According to Plaintiffs, the Secretary[3] has, "without Congressional authorization, 'erected' a 'new office[] and sent hither swarms of officers to harass' Plaintiffs 'and eat out their

---

[3] The Court refers to Defendants collectively as the "Secretary."

substance.'"  Mem. Supp. Pls.' Mot. Summ. J. ("Pls.' Mot.") 1, ECF
No. 37-1 (quoting The Declaration of Independence para. 12 (U.S.
1776)).   More specifically, Plaintiffs claim that the Omnibus
Amendment and the Final Rule violate the MSA, the APA, the
Regulatory Flexibility Act, and the Commerce Clause.

 A. Statutory Interpretation of the MSA

 Plaintiffs first argue that the MSA does not allow industry-
funded monitoring in these circumstances.   The First Circuit has
framed judicial review of an agency's statutory interpretation as
a three-step process:

> First, we assess the statutory text to determine whether
> Congress has directly spoken to the precise question at
> issue.  If so, courts, as well as the agency, must give
> effect to the unambiguously expressed intent of
> Congress.  Second, if Congress's intent is uncertain, we
> decide whether and to what extent the agency's
> interpretation is entitled to deference.  Finally, we
> evaluate the agency's interpretation under the governing
> standard to determine whether it exceeds the bounds of
> the permissible.

Lovgren v. Locke, 701 F.3d 5, 21 (1st Cir. 2012) (citations and
quotations omitted).  As explained below, the Court concludes that
Congress has not spoken unambiguously on the subject, and that the
Secretary's interpretation satisfies Chevron's deferential review.
See Chevron, U.S.A., Inc. v. Nat. Resources Def. Council, Inc.,
467 U.S. 837, 842-43 (1984).

i.    Whether Congress Has Directly Spoken

The Secretary argues that the following statutory provisions of the MSA, when construed in a harmonious fashion, demonstrate that Congress has unambiguously provided for industry-funded monitoring under these circumstances. See Mem. of Law in Supp. of Defs.' Cross-Motion for Summ. J. and in Opp'n to Pls.' Mot. For Summ. J. 11-12, ECF No. 38-1.

First, 16 U.S.C. § 1853(b)(8) states that a fishery management plan may "require that one or more observers be carried on board a vessel of the United States engaged in fishing for species that are subject to the plan, for the purpose of collecting data necessary for the conservation and management of the fishery." Therefore, the Secretary is indisputably allowed to require the presence of monitors. (Plaintiffs' challenge is directed only at program's funding mechanism. See Pls.' Mot. 26; Pls.' Mem. in Resp. to Defs.' Cross-Mot. for Summ. J. and Reply to Opp'n to Pls.' Mot. For Summ. J. ("Pls.' Resp.") 4, ECF No. 40.)

The Secretary's next interpretive hook is 16 U.S.C. § 1853(a), which requires each fishery management plan to include the "conservation and management measures" that are "necessary and appropriate" to "prevent overfishing and rebuild overfished stocks, and to protect, restore, and promote the long-term health and stability of the fishery." Id. § 1853(a)(1)(A), (2); see also id. § 1853(c) (requiring a fishery management plan to be

9

20

accompanied by proposed regulations that are "necessary or appropriate" to implement the plan). The Secretary contends that, to ensure the accuracy of catch estimates and the integrity of annual catch limits in the New England herring fishery, it is necessary and appropriate to place the financial burden of monitoring on industry.

Finally, <u>16 U.S.C. § 1858(g)(1)(D)</u> allows the Secretary to sanction any vessel owner who has not made "any payment required for observer services provided to or contracted by an owner or operator." Plaintiffs theorize that this provision applies only to those limited fisheries in which Congress has explicitly provided for observer fees. <u>See</u> Pls.' Resp. 4. However, this argument elides the fact that sanctions may be issued for failure to pay for services "<u>contracted by</u> an owner or operator." <u>16 U.S.C. § 1858(g)(1)(D)</u> (emphasis added). In the three provisions that explicitly allow the Secretary to charge fees for monitoring, there are no contracts between vessel owners and observers. Rather, the vessel owners pay the fees to NMFS, which hires observers and assigns them to fishing trips. Thus, as explained in the only two cases to address this issue, the statute's mention of contracts "would be unnecessary if the MSA prohibited the very type of industry funding at issue in this case." <u>Loper Bright Enters. v. Raimondo</u>, CV 20-466 (EGS), <u>2021 WL 2440511</u>, at *11 (D.D.C. June 15, 2021) (quoting <u>Goethel v. Pritzker</u>, 15-CV-497-

JL, 2016 WL 4076831, at *5 (D.N.H. July 29, 2016), aff'd on other grounds sub nom. Goethel v. U.S. Dept. of Com., 854 F.3d 106 (1st Cir. 2017)).[4]  However, the words "or contracted by" are fleeting and unspecific, so it goes too far to say that Congress has directly spoken in the Secretary's favor.

Conversely, Plaintiffs contend that Congress has spoken directly in their favor.  As they point out, there are statutes that expressly authorize the Secretary to collect fees to fund observer programs, and none of them apply here.  Plaintiffs therefore contend that approbation of this regulation would render the three statutes superfluous because, whether or not Congress provided for the collection of observer costs, the Secretary could charge such costs to fishing vessels.  See Pls.' Mot. 23-29.

Three such statutes exist.  First, the agency must "collect a fee to recover the actual costs directly related to the management, data collection, and enforcement of any . . . limited access privilege program."[5]  16 U.S.C. § 1854(d)(2)(A).  These

---

[4] The district court in Goethel ruled that the claims were both time-barred and lacked merit.  Goethel v. Pritzker, 15-CV-497-JL, 2016 WL 4076831, at *1 (D.N.H. July 29, 2016).  The First Circuit upheld that decision based on the statute of limitations, without reaching the merits of the claims.  Goethel v. U.S. Dept. of Com., 854 F.3d 106, 108 (1st Cir. 2017).

[5] These programs are complicated regulatory mechanisms through which fishing vessels can receive exclusive rights to harvest portions of a fishery's annual catch limit.  See 16 U.S.C. § 1802(23), (26), (27); see generally id. § 1853a.

fees, which "shall not exceed 3 percent" of the value of the catch, are deposited into a fund earmarked for the administration and implementation of the program. <u>Id.</u> §§ 1854(d)(2)(B-C), 1855(h)(5)(B). Second, the North Pacific Council may establish fishery research plans that require observers to "be stationed on fishing vessels" and that "establish[] a system . . . of fees . . . to pay for the cost of implementing the plan." <u>16 U.S.C. § 1862</u>. Third, the Secretary may station observers on certain foreign fishing vessels and require the vessels to make payments into the Foreign Fishing Observing Fund, which is used to maintain the program. <u>Id.</u> § 1827(b), (d), (e).

But, because those statutes involve "fee-based program[s,]" they are distinguishable "from the industry-funded observer measures at issue here, in which the fishing vessels contract with and make payments directly to third-party monitoring service providers." <u>Loper</u>, <u>2021 WL 2440511</u>, at *12. This distinction matters. Absent a statutory mandate to the contrary, the Miscellaneous Receipts Statute requires that fees be deposited in the Treasury without being earmarked for NMFS activities. <u>See</u> <u>31 U.S.C. § 3302(b)</u>. Therefore, were NMFS to collect the fees here, it could not keep the money. The above-mentioned statutory programs, on the other hand, allow NMFS to keep the money, using it to pay for any or all aspects of the observer program, including NMFS's administrative costs. <u>See</u> 16 U.S.C. §§ 1827(e),

1853a(d)(2), 1855(h)(5)(B), 1862(d).  Instead of collecting fees, the instant program requires fishing vessels to pay third-party monitors directly.  Because the payments never enter NMFS's pockets, the Miscellaneous Receipts Statute is not violated. Importantly, though, this framework is less advantageous than the statutory programs, as NMFS must bear all of its internal costs of administering the program.

Accordingly, there is a meaningful difference between the monitoring program created by the Omnibus Amendment and the statutory observer programs.  The Secretary's interpretation of the MSA does not render the other three statutory provisions superfluous.  See Loper, 2021 WL 2440511, at *12 (holding the same).  With statutory currents flowing in all directions, the Court concludes that Congress's intent regarding industry-funded monitoring is ambiguous, and the inquiry cannot end at step one.[6]

---

[6] Pointing to Anglers Conservation Network v. Pritzker, 139 F. Supp. 3d 102 (D.D.C. 2015), Plaintiffs argue that the Secretary has already anchored herself to the position that industry-funded monitoring is prohibited under the MSA.  See Pls.' Mot. 33-34.  In Anglers, the Mid-Atlantic Fisheries Management Council had proposed a plan in which an observer would be stationed on every small mesh bottom trawl mackerel trip.  NMFS rejected the proposal, and an environmental group sued, seeking to reverse NMFS's decision.  The Secretary argued that the plan would have required NMFS "to augment its budget by accepting fees from the fishing industry[,]" thus violating the Miscellaneous Receipts Statute, 31 U.S.C. § 3302(b).  Anglers, 139 F. Supp. 3d at 116.  That argument is entirely consistent with the Secretary's position in the current litigation:  that the herring monitoring program cannot be funded through fees paid to NMFS, but that it can operate by requiring

ii.  Level of Deference

The next question is "whether and to what extent the agency's interpretation is entitled to deference."  Lovgren, 701 F.3d at 21.  An agency's statutory interpretation warrants Chevron deference "when it appears that Congress delegated authority to the agency generally to make rules carrying the force of law, and that the agency interpretation claiming deference was promulgated in the exercise of that authority."  United States v. Mead Corp., 533 U.S. 218, 226-27 (2001); see also Chevron, 467 U.S. at 842-43.  In other words, Chevron applies where Congress gave the agency the "power to engage in adjudication or notice-and-comment rulemaking."  Mead, 533 U.S. at 227.  Conversely, where an agency's interpretation does not have the force of law – such as in an opinion letter – the weaker Skidmore deference usually governs.  See Christensen v. Harris County, 529 U.S. 576, 587 (2000) (citing Skidmore v. Swift & Co., 323 U.S. 134, 140 (1944)).

Here, Congress delegated authority to make rules implementing the MSA to the Secretary, who in turn assigned that power to the National Oceanic and Atmospheric Administration and NMFS.  See Goethel, 854 F.3d at 109 n.1.  These rules "have the full force and effect of law."  Hadaja, Inc. v. Evans, 263 F. Supp. 2d 346,

---

industry to pay third-party monitors directly.  Thus, Anglers does not help Plaintiffs' cause.

349 (D.R.I. 2003) (citing 16 U.S.C. §§ 1854, 1855). Therefore, *Chevron* deference applies.

### iii. Reasonableness under *Chevron*

Under *Chevron*, the Court must "accept an agency's reasonable resolution of an ambiguity in a statute that the agency administers." *Michigan v. EPA*, 576 U.S. 743, 751 (2015) (citing *Chevron*, 467 U.S. at 842-43). In other words, an interpretation will be upheld if it "represents a reasonable accommodation of conflicting policies that were committed to the agency's care." *Chevron*, 467 U.S. at 845.[7]

Plaintiffs argue that the Secretary's interpretation is unreasonable because it confers on the agency a power not provided by Congress. *See* Pls.' Mot. 26-27. Specifically, Plaintiffs

---

[7] Plaintiffs assert that "*Chevron*'s view of agency deference has . . . been curtailed [since *Goethel*, 2016 WL 4076831], at least through implication, by *Kisor v. Willkie*, 139 S. Ct. 2400 (2019)." Pls.' Mot. 25. But *Kisor*, which dealt solely with deference to agency interpretations of regulations, has little to say about agency interpretation of statutes. *See* 139 S. Ct. 2408. To the extent Plaintiffs assert that *Kisor* altered *Chevron* by indicating that *Chevron* deference is not merely a rubber stamp, that proposition has long been clear. *See, e.g.*, *Util. Air Reg. Group v. EPA*, 573 U.S. 302, 321 (2014) (holding agency's interpretation to be unreasonable, despite *Chevron* deference); *Michigan v. EPA*, 576 U.S. 743, 751 (2015) (holding agency's interpretation to be unreasonable under *Chevron* deference, without step-one analysis); *AT&T Corp. v. Iowa Utilities Bd.*, 525 U.S. 366, 397 (1999) (same). In a throwaway line, Plaintiffs also state that *Chevron* "is inconsistent with the Due Process Clause of the Fifth Amendment and judicial independence and should be abandoned." Pls.' Resp. 18. Of course, though, *Chevron* is binding precedent that cannot be ignored by district courts, including this one.

point to the casus omissus doctrine, which states that "nothing is to be added to what the text states or reasonably implies." Gorss Motels, Inc. v. Safemark Systems, LP, 931 F.3d 1094, 1102 (11th Cir. 2019) (quoting Antonin Scalia & Bryan Garner, Reading Law: The Interpretation of Legal Texts § 8, at 93 (2012)).  As Plaintiffs emphasize, 16 U.S.C. § 1853(b)(8) - which states that the Secretary can force fishing vessels to allow monitors on their boats - does not mention an industry-funding model (or any funding mechanism at all).  Indeed, if § 1853(b)(8) were the sole statute relied upon by the Secretary, the casus omissus doctrine might be more helpful.  But instead, the Secretary relies on provisions that empower the Secretary to take a wide range of actions to effectuate the goals of the MSA.

To start, Congress has tasked the Secretary with ensuring that the maximum number of fish can be caught, while simultaneously preventing overfishing.  16 U.S.C. § 1851(a)(1).  The most valuable tool for accomplishing these goals is the imposition of annual catch limits.  See 50 C.F.R. § 600.310(b)(1)(iii).  Of course, the Secretary's ability to accurately track annual catches is crucial to her efforts to enforce those limits.  To this end, Congress recognized that human observers could play an important role in improving the accuracy and reliability of NMFS's tracking, as shown by the express authorization of observer requirements in fishery management plans.  See 16 U.S.C. § 1853(b)(8).  As for the funding

16

of these observers, the statutory clues provide some support for
the idea that the Secretary can impose costs on industry.  See id.
§ 1858(g)(1)(D) (allowing imposition of sanctions for failure to
pay for "observer services provided to or contracted by an owner
or operator").  Moreover, Congress gave the Secretary the power to
take any measures that are "necessary and appropriate" to achieve
the MSA's conservation goals.  Id. §§ 1853(a)(1)(A).  Given the
integral nature of catch estimates to the MSA's goals, along with
the agency's financial incapacity to fully fund a monitoring
program, it was reasonable for the Secretary to conclude that
industry-funded monitoring is permitted under the MSA.  See Final
Rule, 85 Fed. Reg. at 7414 (AR17731) ("This amendment remedies
NMFS disapprovals of previous Council proposals for industry-
funded monitoring that either required NMFS to spend money that
was not yet appropriated or split monitoring costs between the
fishing industry and NMFS in ways that were inconsistent with
Federal law.").

The legislative history reinforces this conclusion.  Prior to
the passage of § 1853(b)(8), which statutorily authorized at-sea
monitoring, the Secretary had operated a North Pacific monitoring
program in which vessel operators directly paid third-party
monitors.  See Loper, 2021 WL 2440511, at *13 (citing Groundfish
of the Gulf of Alaska, Groundfish Fishery of the Bering Sea &
Aleutian Islands Area, 55 Fed. Reg. 4839-02, 4840 (Feb. 12, 1990)).

By enacting § 1853(b)(8), Congress arguably ratified NMFS's usage of industry-funded monitoring programs. Moreover, in the years since, "[c]ongressional committees have continued to take note of such industry-funded programs." Loper, 2021 WL 2440511, at *13 (citations omitted).

Thus, in keeping with the statutory text, the only two on-point decisions (Loper and Goethel), and the legislative history, the Court concludes that the Secretary reasonably interpreted the MSA to authorize the Omnibus Amendment.

B. National Standards

Fishery management plans must comply with ten "National Standards." 16 U.S.C. § 1851(a). Casting a wide net, Plaintiffs contend that the industry-funded monitoring program violates five of them.

i. National Standard One

The first standard provides that "[c]onservation and management measures shall prevent overfishing while achieving, on a continuing basis, the optimum yield from each fishery." 16 U.S.C. § 1851(a)(1). "The determination of [optimum yield] is a decisional mechanism for resolving the Magnuson-Stevens Act's conservation and management objectives, achieving [a fishery management plan]'s objectives, and balancing the various interests that comprise the greatest overall benefits to the Nation." 50 C.F.R. § 600.310(b)(2)(ii).

Plaintiffs argue that the monitoring exemption for trips landing less than fifty metric tons of herring does not serve these goals. Pls' Mot. 30. They contend that this rule unfairly burdens boats with on-board freezing capacity, which tend to take longer trips, thus leading to larger catches per trip. Id. Instead of a per-trip cutoff, Plaintiffs say, a per-day cutoff should have been used. See id. at 30-32.

However, National Standard One simply states that yield should be as high as it can be while avoiding the risk of overfishing. See 16 U.S.C. § 1851(a)(1). The incongruity between Plaintiffs' argument and this standard is illustrated by Plaintiffs' reliance on Western Sea Fishing Co. v. Locke, 722 F. Supp. 2d 126 (D. Mass. 2010). There, the court held that NMFS's denial of the plaintiff's application for a fishing license was "not rationally related to achieving optimum yield" because there was "simply no evidence or contention of a current danger of overfishing." Id. at 140. Importantly, relying on the fact that the fishery industry had not been reaching the annual catch limit, the court held that the license denial did not help to avoid surpassing the yearly limit. Id. As Plaintiffs note here, Atlantic herring were not overfished at the time the industry-funded monitoring regulations were implemented.[8]   However,

---

[8] Just because a fishery is not approaching overfished status does not mean that NMFS cannot institute a fishery management plan.

Plaintiffs make no argument that the industry-funded monitoring rule will change the optimum yield or the industry's ability to reach that yearly level. Their argument simply concerns equity among the various participants in the herring fishery. National Standard One says nothing about those concerns.

    ii.  National Standard Two

Under the second standard, fishery management plans must "be based upon the best scientific information available." 16 U.S.C. § 1851(a)(2). Noting that herring was not overfished at the time that the regulation was promulgated, Plaintiffs argue there is no scientific data to indicate that more monitoring would help prevent overfishing. Pls.' Mot. 31. The Court disagrees.

First, common sense instructs that additional data collection will lead to more accurate catch estimates. Moreover, National Standard Two "'does not mandate any affirmative obligation on [NMFS'] part' to collect new data." Massachusetts v. Pritzker, 10 F. Supp. 3d 208, 220 (D. Mass. 2014) (quoting Commonwealth of Mass. by Div. of Marine Fisheries v. Daley, 10 F. Supp. 2d 74, 77 (D. Mass. 1998)). In order to successfully challenge a fishery management plan under National Standard Two, a plaintiff must point

---

See Anglers Conservation Network v. Pritzker, 139 F. Supp. 3d 102, 113 (D.D.C. 2015). And once a fishery management plan is in the works, the Secretary is explicitly tasked with preventing overfishing, not just remediating extant problems. See, e.g., 16 U.S.C. § 1853(a)(1)(A).

to specific scientific data that were ignored by the agency.  See Massachusetts ex rel. Div. of Marine Fisheries v. Daley, 170 F.3d 23, 30 (1st Cir. 1999) ("If no one proposed anything better, then what is available is the best.").  Because Plaintiffs do not point to any information that was ignored, National Standard Two lends no wind to their sails.[9]

### iii. National Standard Six

The sixth standard provides that "[c]onservation and management measures shall take into account and allow for variations among, and contingencies in, fisheries, fishery resources, and catches."  16 U.S.C. § 1851(a)(6).  "There is no requirement in national standard 6 or anywhere else in the statute that defendant finely attune its regulations to each and every fishing vessel in the offshore fishery."  Ace Lobster Co. v. Evans,

---

[9] Plaintiffs also make the curious argument that observers have been assigned to a higher percentage of Plaintiffs' fishing trips than those of other boats, and that this disparity is unsupported by scientific reasoning.  See Pls.' Mot. 9, 31. However, the monitoring program at issue had not yet started when these issues were briefed, so the higher observer rate cited by Plaintiffs must be part of a different program, likely the government-funded SBRM program.  See Pls.' Second Notice of Facts Subsequent to Filing Summ. J. 1, ECF No. 45 (explaining that monitoring requirement had not yet begun); AR17805.  The Omnibus Amendment seeks to augment the SBRM program such that fifty percent of herring fishing trips are covered by one program or the other. Final Rule, 85 Fed. Reg. 7417 (Feb. 7, 2020) (to be codified at 50 C.F.R. pt. 648) (AR17734).  Thus, to the extent that Plaintiffs are subject to greater rates of a SBRM monitoring, this disparity will lead to Plaintiffs paying for fewer at-sea monitors than they would have otherwise, not more.

165 F. Supp. 2d 148, 182 (D.R.I. 2001). Rather, the standard merely requires the regulation to "be flexible enough to allow timely response to resource, industry and other national and regional needs." Id. at 181-82 (quoting J.H. Miles and Co. v. Brown, 910 F. Supp. 1138, 1155 (E.D. Va. 1995)).

Plaintiffs do not contend that the rule lacks flexibility to adapt to future developments. Instead, Plaintiffs complain that "[t]he Final Rule takes no notice that Plaintiffs are multi-species fishers." Pls.' Mot. 31. This harkens back to the argument first made under National Standard One. See Pls.' Mot. 30. Plaintiffs' boats, due to their on-board freezing capabilities, are built to remain at sea for much longer trips (7-14 days) than other boats (2-3 days). See AR17710-15. Under the Final Rule, Plaintiffs bear a greater regulatory burden than other boats. To illustrate, assume that Plaintiffs and certain other boats all tended to catch 15 metric tons of herring per day. Plaintiffs, with average trip lengths exceeding 7 days, would be subject to the monitoring requirement because they would catch far more than 50 metric tons per trip. The non-freezer boats, even at the same rate of 15 metric tons per day, would not hit the cutoff on their 2- or 3-day trips. Thus, a per-day threshold would be better for Plaintiffs.

The Final Rule discussed this exact complaint, stating that "the Council explicitly considered measures to address

[Plaintiffs'] concern about disproportional impacts on its vessels, including considering alternatives for coverage waivers for trips when landings would be less than 20-percent herring or less than 50 mt of herring per day." Final Rule, 85 Fed. Reg. at 7426 (AR17743). Nonetheless, the agency decided against those measures because "the potential for a relatively high herring catches per trip aboard [Plaintiffs'] vessels warranted additional monitoring." Id.[10] However, this explanation arguably begs the question: Why should the metric for "high herring catches" be keyed to trips, not days? Especially since the primary goal of monitoring – ensuring optimum yield – is based on a year-long period, not a number of trips.

In Ace Lobster, the Secretary imposed a flat cap on the number of lobster traps that any fishing vessel could utilize. 165 F. Supp. 2d at 153. The plaintiffs pointed out that, prior to the

---

[10] In the midst of their arguments under the National Standards, Plaintiffs also assert that the per-trip waiver is "[o]ne of the unexplained arbitrary and capricious aspects of the Final Rule." Pls.' Mot. 30. Based on NMFS's determination that the increased burden on Plaintiffs was justified by their capacity for high herring catches, the Court concludes that the waiver is not arbitrary and capricious. See Hall v. Evans, 165 F. Supp. 2d 114, 128 (D.R.I. 2001) (noting that, because a decision between alternative fishery conservation measures presents "a classic example of a factual dispute the resolution of which implicates substantial agency expertise[,]" an agency's decision cannot be set aside unless "the administrative record is so devoid of justification . . . that the decision is necessarily arbitrary and capricious" (internal quotation marks and citations omitted)).

regulation's implementation, certain boats used as many as 5,000 traps, while others used as few as 600. Id. at 182. They thus argued that the flat cap unfairly burdened those vessels with historically larger capacities. Id. However, the plaintiffs asked too much of the standards; the agency's failure to "finely attune its regulations to each and every fishing vessel in the offshore fishery" was insufficient to sink the rule. Id. Moreover, "NMFS included adaptive management measures in the Final Rule that w[ould] enable future consideration of state/federal collaboration efforts, including trap reductions based on historical participation[,]" thus indicating compliance with National Standard Six. Id. (internal quotation marks and citation omitted).

Same here. Plaintiffs note that "the record reveals no other vessels . . . in the Atlantic herring fleet" like theirs: boats with freezing capacity that catch multiple species during lengthy trips. Pls.' Mot. 10. Although that fact may engender sympathy for two disproportionately burdened businesses, it ultimately weighs against Plaintiffs' argument. The Secretary is not required to alter regulatory metrics in order to accommodate two vessels. As this Court has stated, the National Standards are not violated where the agency reasonably believes that a regulation "would benefit the overall fishery to the (unfortunate) detriment of certain fishermen." Hadaja, Inc. v. Evans, 263 F. Supp. 2d 346, 355 (D.R.I. 2003) (citing Alliance Against IFQs v. Brown, 84 F.3d

343, 349 (9th Cir. 1996); Hall v. Evans, 165 F. Supp. 2d 114, 146-
47 (D.R.I. 2001)). Rather, "[t]he Secretary is allowed . . . to
sacrifice the interest of some groups of fishermen for the benefit
as the Secretary sees it of the fishery as a whole." Fishermen's
Finest, Inc. v. Locke, 593 F.3d 886, 899 (9th Cir. 2010) (citation
omitted). The record indicates that the Secretary did exactly
that, determining that the per-trip exemption was the best option
for the fishery as a whole and that any extra burden on Plaintiffs
would not be as large as they claimed. See Final Rule, 85 Fed.
Reg. at 7417 (AR17734). Lastly, after two years, NMFS will review
the rule and make "a framework adjustment or an amendment to the
Herring [fishery management plan], as appropriate[,]" id., thus
complying with the requirement for flexibility. National Standard
Six is satisfied.

iv. National Standards Seven and Eight

The seventh standard requires the Secretary, "where
practicable, [to] minimize costs and avoid unnecessary
duplication." 16 U.S.C. § 1851(a)(7). Relatedly, the eighth
standard provides that "[c]onservation and management measures
shall, consistent with the conservation requirements of this
chapter (including the prevention of overfishing and rebuilding of
overfished stocks), take into account the importance of fishery
resources to fishing communities by utilizing economic and social
data that [are based upon the best scientific information

available], in order to (A) provide for the sustained participation of such communities, and (B) to the extent practicable, minimize adverse economic impacts on such communities." Id. § 1851(a)(8). Despite the concern for the economic health of fishing communities, Congress "inten[ded] that conservation efforts remain the Secretary's priority, and that a focus on the economic consequences of regulations not subordinate this principal goal of the MSA." N. Carolina Fisheries Ass'n, Inc. v. Gutierrez, 518 F. Supp. 2d 62, 91–92 (D.D.C. 2007) (citing 50 C.F.R. § 600.345(b)(1)).

This inquiry is deferential, and the Secretary's decision to impose costs on fishing communities is protected by a "rule of reason." Little Bay Lobster, 352 F.3d at 470 (citing Daley, 127 F.3d at 110–111). The Court must "ask whether the Secretary has examined the impacts of, and alternatives to, the plan [she] ultimately adopts and whether a challenged failure to carry the analysis further is clearly unreasonable, taking account of [considerations such as] whether information is available and whether the further analysis is likely to be determinative." Id.

Here, the agency estimated the financial impact on fishing vessels and adjusted the monitoring requirements to reduce that impact. For example, it chose a 50 percent total monitoring requirement instead of a goal of 75 or 100 percent. Additionally, government-funded SBRM monitoring was included in that target, thus reducing the burden on industry. The regulation also exempts

any trip that does not plan to catch more than 50 metric tons of herring. Furthermore, though not applicable to the boats owned by Plaintiffs, the Final Rule allowed certain types of boats to utilize electronic monitoring instead of human monitors.

As discussed, Plaintiffs argue that a per-day metric, which would have eased their burden, should have been used to calculate the weight-based monitoring exemption. But the agency considered such options and determined that they would provide insufficient monitoring capabilities, which would jeopardize the achievement of the optimum yield lodestar. See Final Rule, 85 Fed. Reg. at 7417 (AR17734). Under the standards, that decision was the Secretary's prerogative.

In sum, Plaintiffs have not established that the industry-funded program violates the National Standards. See Loper, 2021 WL 2440511, at *16-19 (holding that Omnibus Amendment did not violate standards seven and eight).

C.    Timing of Notice and Comment

In a rather undeveloped argument, Plaintiffs contend that the agency did not follow notice-and-comment requirements. Pls.' Mot. 28. Specifically, Plaintiffs incorrectly state that "the Secretary of Commerce approved the [Omnibus Amendment] before the comment period was over, making a mockery of the comment requirement." Pls.' Mot. 28. But, to be clear, the Secretary did not approve the amendment before its comment period had concluded.

27

Rather, the Secretary approved the amendment before the separate comment period for the proposed rule had ended.  Plaintiffs point to no authority, and develop no argument, indicating that the comment periods for an amendment and its implementing rule cannot overlap.  Moreover, Plaintiffs suffered no prejudice based on this overlap, as the Final Rule responded to all submissions from both comment periods.  Thus, this timing argument is a belly flop.  See Loper, 2021 WL 2440511, at *30 (rejecting similar argument).

D.   Regulatory Flexibility Act

Lastly, Plaintiffs argue that the promulgation of the industry-funded monitoring program violated the Regulatory Flexibility Act ("RFA"), 5 U.S.C. §§ 601–612.  The RFA "does not alter the substantive mission of the agencies under their own statutes; rather, the Act creates procedural obligations to assure that the special concerns of small entities are given attention in the comment and analysis process when the agency undertakes rule-makings that affect small entities."  Little Bay Lobster, 352 F.3d at 470.  Where, as here, a regulation would "have a significant economic impact on a substantial number of small entities[,]" the agency must analyze "the effect of the proposed rule on small businesses and discuss[] alternatives that might minimize adverse economic consequences."  N. Carolina Fisheries Ass'n, Inc. v. Gutierrez, 518 F. Supp. 2d 62, 72–73 (D.D.C. 2007) (citation omitted).  If the agency decides to issue the regulation despite

28

Case 1:20-cv-00108-WES-PAS Document 50-1 Filed 10/28/21 Page 40 of 44 PageID #: 18997

the impact on small businesses, the agency must issue a final regulatory flexibility analysis, including "a description of the steps the agency has taken to minimize the significant economic impact on small entities" and "a statement of the factual, policy, and legal reasons for selecting the alternative adopted in the final rule and why each one of the other significant alternatives to the rule considered by the agency . . . was rejected." 5 U.S.C. § 604(a)(5). The RFA does not "require that the agency give explicit consideration to certain classes of small businesses that are affected more gravely than other small businesses." Hall v. Evans, 165 F. Supp. 2d 114, 146-47 (D.R.I. 2001).

Here, the agency did issue a final regulatory flexibility analysis, explaining the potential impacts on small businesses, the concessions made to accommodate their economic interests, the alternatives that could have further lessened that impact, and the reasons why the agency did not adopt those alternatives. See Final Rule, 85 Fed. Reg. at 7427-430 (AR17744-47). Nonetheless, Plaintiffs contend that "[t]he Agency never considered or included the recommendations to make exemptions available for at-sea processors which can take advantage of none of the measures it did consider." Pls.' Mot. 38. This assertion is belied by the plain text of the Final Rule. As discussed, "the Council explicitly considered measures to address Seafreeze's concern about disproportional impacts on its vessels [from the industry-funded

monitoring requirement], including considering alternatives for coverage waivers for trips when landings would be less than 20-percent herring or less than 50 mt of herring per day." Final Rule, 85 Fed. Reg. at 7426 (AR17743). Despite these considerations, the agency stuck with the 50-metric-ton cutoff because "the potential for a relatively high herring catches per trip aboard those vessels warranted additional monitoring." Id.

Therefore, the agency satisfied the RFA's (solely procedural) requirements. See Loper, 2021 WL 2440511, at *28 (holding that Omnibus Amendment did not violate RFA); see also Little Bay Lobster, 352 F.3d at 471 (denying RFA challenge, even though "the final statement did little more than acknowledge that 'several commentators' had objected to the change in the boundary line and responded by referring to the 'current consensus' in support of the new regime as a whole").

E.    Commerce Clause

Finally, Plaintiffs contend that the monitoring program exceeds Congress's authority to regulate commerce. Pls.' Mot. 34-36. Under the Commerce Clause, Congress may regulate a wide variety of public and private actions, including those activities that "have a substantial effect on interstate commerce." Nat'l Fed'n of Indep. Bus. v. Sebelius, 567 U.S. 519, 549 (2012) (quoting United States v. Darby, 312 U.S. 100, 118-119 (1941)). In Sibelius, the Supreme Court examined a provision of the Affordable

30

Care Act that imposed a monetary penalty on any individual who failed to maintain health insurance. Id. at 538-39. Chief Justice Roberts, writing alone, noted that the provision "d[id] not regulate existing commercial activity" but "instead compel[ed] individuals to become active in commerce by purchasing a product." Id. at 552. The Chief Justice therefore reasoned that the law could not be justified under the Commerce Clause. Id. at 558; see also id. at 650-660 (joint op. of Scalia, Kennedy, Thomas, and Alito, JJ., dissenting) (agreeing that the individual mandate exceeded the scope of Congress's authority under the Commerce Clause). But see id. at 606-618 (Ginsburg, J., joined by Sotomayor, Breyer, and Kagan, JJ., dissenting in part) (disagreeing with the Chief Justice's Commerce Clause analysis).

Based on this holding, Plaintiffs contend that the monitoring program unconstitutionally compels them to become active in the market for at-sea monitors. This analogy holds no water. The relevant market is not the monitoring market, but rather the commercial herring fishing market. If Plaintiffs do not want to pay for monitoring, they can decline to fish for herring, limit their herring catches to fifty metric tons per trip, leave the New England region, or purchase fishing vessels that qualify for electronic monitoring. Unlike the involuntary insurance purchasers – who could not, short of leaving the country, avoid the health insurance requirement – Plaintiffs are voluntary market

participants.  Therefore, the regulatory scheme does not violate the Commerce Clause.  See Goethel, 2016 WL 4076831, at *7 (rejecting Commerce Clause argument and concluding that "the costs of monitors are part of the permissible regulation of [the] plaintiffs' commercial fishing activities").

IV. CONCLUSION

The Secretary reasonably concluded that industry-funded monitoring was necessary and appropriate to effectuate the goals of the Atlantic herring fishery management plan and the MSA. Moreover, the process and rules through which the agency effectuated the monitoring program did not violate the National Standards, the RFA, or the APA.  Lastly, the program does not exceed Congressional authority under the Commerce Clause. Plaintiffs' Motion for Summary Judgment, ECF No. 37, is DENIED, and Defendants' Cross-Motion for Summary Judgment, ECF No. 38, is GRANTED.

IT IS SO ORDERED.

_WEsmith_ (signature)
_____
William E. Smith
District Judge
Date: September 20, 2021

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

RELENTLESS INC., et al.,

     Plaintiffs,

     v.                          CA No. 20-cv-108-WES-PAS

U.S. DEPARTMENT OF COMMERCE,
et al.,

     Defendants.

<u>**JUDGMENT**</u>

     This action came to be heard before the Court and a decision has been rendered.  Upon consideration whereof, it is now hereby ordered, adjudged, and decreed as follows:

     Pursuant to this Court's Opinion and Order entered on September 20, 2021, and in accordance with <u>Fed. R. Civ. P. 58</u>., judgment is hereby entered in favor of the Defendants U.S. Department of Commerce, et al., and against Plaintiffs Relentless Inc., et al.

     <u>It is so ordered</u>.

September 20, 2021            By the Court:

                                 <u>/s/ Hanorah Tyer-Witek.</u>
                                 Clerk of Court